ing the process claimed, describes the process previously used for preserving frozen ice cream. All that the patentee has done, according to his claim, is to take the frozen ice cream out of the vessel, and put into it a fish or other article, frozen or unfrozen. That is no patentable invention. If the process of preserving the frozen ice cream had not existed previously, the use of such process, in the manner stated, would be within the claim of the patent, and would be an infringement of it. The prior use of such process must, therefore, be an anticipation of the claim of the patent, at least, in a case like this.

The patentee may be the first person who has practically succeeded in introducing into the market, at all seasons, salmon as fresh as when first caught, and may thus have supplied a great desideratum, and have established a business that is commercially profitable. He may have invented something, in that connection, which is capable of being protected by a patent, and he may have described in this specification, or shown in the model or drawings accompanying it, something which may be claimed, and well claimed, as an invention, and which may be secured to him by a reissue. But, the difficulty with the present claim is, that it is too broad, and that it covers nothing but a process, and that a process practised before, substantially in the manner set forth in the specification.

For these reasons, the bill must be dismissed, with costs.

[On appeal to the supreme court, the decree of this court was affirmed. 91 U. S. 44.]
[For other cases involving this patent, see note to Piper v. Brown, Case No. 11,180.]

---

## Case No. 11,183.

PIP'SICO v. BONTZ.

[3 Cranch, C. C. 425.] [1]

Circuit Court, District of Columbia. April Term, 1829.

INDEBITATUS ASSUMPSIT FOR WORK AND LABOR—COMPETENCY OF COLORED MAN AS WITNESS.

1. If work and labor be done according to special agreement, the plaintiff may recover upon a general indebitatus assumpsit.

2. In Alexandria, a colored man is not a competent witness for or against a white man.

Indebitatus assumpsit for work and labor.

The plaintiff offered evidence of a special agreement for $100 a year, and that the service was performed according to the agreement.

The defendant's counsel objected, that there was no count upon the special agreement.

THE COURT overruled the objection on the authority of the Bank of Columbia v. Patterson, 7 Cranch [11 U. S.] 299.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Taylor and Mr. Neale, for plaintiff.
Mr. Hooe and Mr. Hewitt, for defendants.

The defendants' counsel offered a free mulatto as a witness for the defendants.

Mr. Taylor, for plaintiff, objected; and cited the Virginia laws (Rev. Code, p. 187, December 17, 1792, c. 103, § 5), that "no negro or mulatto shall be a witness, except in pleas of the commonwealth against negroes or mulattoes; or in civil pleas where negroes or mulattoes alone shall be parties."

THE COURT rejected the witness.

---

PITCAIRN (LIENOW v.). See Case. No. 8,341.

---

## Case No. 11,184.

In re PITMAN.

[1 Curt. 186.] [1]

Circuit Court, D. Rhode Island. June Term, 1852.

CONTEMPT—APPLICATION FOR ORDER TO OFFICER OF COURT TO PAY OVER MONEY—EVIDENCE—SWORN ANSWERS—ACT OF MARCH 2, 1831.

1. An application to the court to compel one of its officers to pay over money due from him in his official capacity, is a proceeding as for a contempt, and the court has jurisdiction under the act of congress of March 2, 1831 [4 Stat. 487].

[Cited in Re May, 1 Fed. 743; U. S. v. Anon., 21 Fed. 768, 770; Re Manning, 44 Fed. 276.]
[Cited in Cartwright's Case, 114 Mass. 239.]

2. In such a proceeding the sworn answers of the officer are evidence in his favor.

[Cited in State v. Matthews, 37 N. H. 456.]

Burrington Anthony, lately marshal of the United States for the district of Rhode Island, filed his petition, stating that, as marshal, he received from the treasury of the United States, and paid to [John T. Pitman] the clerk of this court, large sums of money, from time to time claimed by him for fees due to him from the United States; that subsequently, on a settlement of his accounts with the treasury, various items of the clerk's accounts, which had been thus paid, were disallowed, and the petitioner has thus overpaid to the clerk, the sum of twenty-five hundred dollars. He prays for an order to show cause, and the appointment of a master to audit the account, and for an order on the clerk to repay what may be found due. The answer of the clerk admits that he rendered to the petitioner charges against the United States, which, on being audited at the treasury department, were disallowed, amounting to the sum of $2,293.46. But he denies that he had received from the marshal any money on account of those charges. He states that he received from the marshal certain memorandum checks, amounting to the sum of $4,424.92, on account of the bills of cost, which embraced the rejected items; that

---

[1] [Reported by B. R. Curtis, Esq.]